## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the United States Department of Health and Human Services ("HHS"), (hereinafter, the "United States"), and North East Mobile Health Services ("NEMHS") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Defendant NEMHS, located at 24 Washington Street, Scarborough, Maine, is the largest ambulance service in the state of Maine. NEMHS is a Maine for-profit business corporation.

B. The United States contends that NEMHS submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare").

C. The United States contends that it has certain civil claims against NEMHS arising from its submission of claims during the period from October 23, 2007 through February 13, 2018, for engaging in a practice of seeking Medicare reimbursement for patients it falsely claimed were either "bed-confined" or that transportation by ambulance was otherwise medically required. Such conduct is referred to below as the "Covered Conduct."

D. This Agreement is neither an admission of liability by NEMHS, as NEMHS denies any liability, nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.  NEMHS agrees to repay to the United States the sum of Eight Hundred Twenty-Five Thousand Dollars (**$825,000.00**) (the "Settlement Amount"), and the amount designated by the United States as restitution for purposes of 26 U.S.C. § 162(f)(2)(A)(ii) is $825,000.00. NEMHS will make a payment to the United States in the amount of Seventy-Five Thousand Dollars (**$75,000.00**) by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the District of Maine no later than thirty (30) days after the Effective Date of this Settlement Agreement.

    A.  Over a period of five years, NEMHS will thereafter pay the remaining Seven Hundred and Fifty Thousand Dollars (**$750,000.00**), plus interest at 2.375% per annum, pursuant to the Promissory Note ("Note") in the form of **Exhibit A** attached to this Agreement and incorporated herein by reference, that NEMHS agrees to execute contemporaneously with this Agreement.

    B.  Interest shall accrue on the unpaid settlement amount as indicated in the Note. Collectively the settlement amount and interest received by the United States shall be referred to as the "Settlement Proceeds."

2.  In the event that NEMHS fails to pay any amount as provided in Paragraph 1 above within five (5) days of the Due Dates set out in Paragraph 1 of the Note or the occurrence of any of the other events described in Paragraph 4 of the Note, NEMHS shall be in default of its payment obligations ("Event of Default"). The United States will provide written notice of the Event of Default and NEMHS shall have the opportunity to cure such Event of Default within five (5) business days of receipt of the notice. Notice of the Event of Default will be sent by first class mail addressed to the attorneys for NEMHS. If NEMHS fails to cure such Event of Default within five (5) business days of receiving the Notice of the Event of Default, the remaining

2

unpaid balance of the Settlement Amount shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily from the date of the Event of Default on the remaining unpaid total (principal and interest balance). NEMHS shall pay the United States all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

3.  Exercise of Rights Upon the Event of Default.

   a.  Upon declaration of the Event of Default, the United States may exercise, at its sole discretion, one or more of the following rights, as applicable: (a) move the U.S. District Court to enforce the balance of the Stipulated Judgment against NEMHS; (b) declare this Agreement breached, and proceed with any claims against NEMHS, including those to be released by this Agreement; (c) offset the remaining unpaid balance, inclusive of interest, from any amounts due and owing to NEMHS by any department, agency, or agent of the United States at the time of the Event of Default; (d) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. NEMHS agrees not to contest any offset imposed pursuant to this provision, either administratively or in any state or federal court.

   b.  In the Event of Default as defined in Paragraph 2 above, OIG-HHS may exclude NEMHS from participating in all Federal health care programs until NEMHS pays the Settlement Amount and reasonable costs as set forth above. OIG-HHS will provide written notice of any such exclusion to NEMHS. NEMHS waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion NEMHS wishes to apply for reinstatement, it must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§

1001.3001-.3005. NEMHS will not be reinstated unless and until the OIG-HHS approves such request for reinstatement.

4.      Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon NEMHS' full payment of the Settlement Amount, and subject to Paragraph 15 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases NEMHS from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Notwithstanding the releases given in paragraph 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

   a.   Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

   b.   Any criminal liability;

   c.   Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

   d.   Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

   e.   Any liability based upon obligations created by this Agreement;

   f.   Any liability of individuals; and

   g.   Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6. NEMHS has provided sworn financial disclosure statements ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. NEMHS warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which NEMHS had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by NEMHS on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $10,000.00 or more, the United States may at its option: (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of NEMHS previously undisclosed. NEMHS agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

7. In the event that the United States, pursuant to Paragraph 6 (concerning disclosure of assets), above, opts to rescind this Agreement, NEMHS agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within ninety (90) calendar days of written notification to NEMHS that this Agreement has been rescinded, and (b) relate to the Covered Conduct.

8. NEMHS waives and shall not assert any defenses NEMHS may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment

of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. NEMHS fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that NEMHS has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier, or any state payer, related to the Covered Conduct; and NEMHS agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11. NEMHS agrees to the following, if applicable:

    a.    <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of NEMHS, its present or former officers, directors, employees, shareholders, and agents in connection with:

        (1)    the matters covered by this Agreement;

        (2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

  (3) NEMHS' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

  (4) the negotiation and performance of this Agreement; and

  (5) the payment NEMHS makes to the United States pursuant to this Agreement;

are unallowable costs for government contracting purposes and under the Medicare Program (hereinafter referred to as Unallowable Costs).

 b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by NEMHS, and NEMHS shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by NEMHS or any of its subsidiaries or affiliates to the Medicare Program.

 c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: NEMHS further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare fiscal intermediaries, carriers, and/or contractors, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by NEMHS or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. NEMHS agrees that

the United States, at a minimum, shall be entitled to recoup from NEMHS any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by NEMHS or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on NEMHS or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

    d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine NEMHS' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

  12. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 13 (waiver for beneficiaries paragraph), below.

  13. NEMHS agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

  14. NEMHS warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for

new value given to NEMHS, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which NEMHS was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

15. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, NEMHS commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of NEMHS' debts, or seeking to adjudicate NEMHS as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for NEMHS or for all or any substantial part of NEMHS' assets, NEMHS agrees as follows:

    a. NEMHS' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and NEMHS shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) NEMHS' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) NEMHS was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to NEMHS.

    b. NEMHS acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

16. Within three (3) business days of execution of this Agreement, the United States shall file a Complaint against NEMHS for alleged violations of the False Claims Act, 31 U.S.C.

§§ 3729-3733 (the "Civil Action"). On that same date, the Parties shall sign and file in the Civil Action a Joint Motion for Stipulated Judgment for $825,000.00 in favor of the United States on its Complaint, attaching a copy of this Agreement as an exhibit to the motion.

17. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Maine. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on NEMHS' successors, transferees, heirs, and assigns.

24. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURE BLOCKS APPEAR ON NEXT PAGE]

### THE UNITED STATES OF AMERICA

DATED: February 22, 2018    BY: _____
Andrew K. Lizotte
Assistant United States Attorney
District of Maine

DATED: February 21st, 2018    BY: _____
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

12

## DEFENDANT NORTH EAST MOBILE HEALTH SERVICES

DATED: February __ 2018

BY: _____
Charles McCarthy, Owner
North East Mobile Health Services

DATED: February 14 2018

BY: _____
Ronald W. Schneider, Jr., Esq.
Counsel to North East Mobile Health Services

# Exhibit A to Settlement Agreement
## Promissory Note

1.  For value received, and pursuant to the Settlement Agreement into which this Promissory Note ("Note") is incorporated by reference and attached thereto as Exhibit A, North East Mobile Health Services ("Maker") ("NEMHS") promises to pay to the United States of America ("Holder"), or its assignee, the full principal sum of $825,000.00, together with interest accruing at the rates of 2.375% per annum ("Outstanding Balance"), as set forth below.

Schedule of Payments (including interest):

|  | Month | Due Date | Payment Due | Interest | Principal | Balance |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | $825,0000 |
| Down Payment |  | Per settlement agreement | $75,000 | $75,000 | 2.375% | $750,000 |
| **2018** | 1 | 3/1/2018 | ($13,258.49) | $1,464.04 | ($11,794.45) | $738,205.55 |
|  | 2 | 4/1/2018 | ($13,258.49) | $1,441.02 | ($11,817.47) | $726,388.08 |
|  | 3 | 5/1/2018 | ($13,258.49) | $1,417.95 | ($11,840.54) | $714,547.54 |
|  | 4 | 6/1/2018 | ($13,258.49) | $1,394.84 | ($11,863.65) | $702,683.89 |
|  | 5 | 7/1/2018 | ($13,258.49) | $1,371.68 | ($11,886.81) | $690,797.08 |
|  | 6 | 8/1/2018 | ($13,258.49) | $1,348.47 | ($11,910.02) | $678,887.06 |
|  | 7 | 9/1/2018 | ($13,258.49) | $1,325.22 | ($11,933.27) | $666,953.79 |
|  | 8 | 10/1/2018 | ($13,258.49) | $1,301.93 | ($11,956.56) | $654,997.23 |
|  | 9 | 11/1/2018 | ($13,258.49) | $1,278.59 | ($11,979.90) | $643,017.33 |
|  | 10 | 12/1/2018 | ($13,258.49) | $1,255.21 | ($12,003.28) | $631,014.05 |
| **2019** | 11 | 1/1/2019 | ($13,258.49) | $1,231.77 | ($12,026.72) | $618,987.33 |
|  | 12 | 2/1/2019 | ($13,258.49) | $1,208.30 | ($12,050.19) | $606,937.14 |
|  | 13 | 3/1/2019 | ($13,258.49) | $1,184.77 | ($12,073.72) | $594,863.42 |
|  | 14 | 4/1/2019 | ($13,258.49) | $1,161.21 | ($12,097.28) | $582,766.14 |
|  | 15 | 5/1/2019 | ($13,258.49) | $1,137.59 | ($12,120.90) | $570,645.24 |
|  | 16 | 6/1/2019 | ($13,258.49) | $1,113.93 | ($12,144.56) | $558,500.68 |
|  | 17 | 7/1/2019 | ($13,258.49) | $1,090.22 | ($12,168.27) | $546,332.41 |
|  | 18 | 8/1/2019 | ($13,258.49) | $1,066.47 | ($12,192.02) | $534,140.39 |
|  | 19 | 9/1/2019 | ($13,258.49) | $1,042.67 | ($12,215.82) | $521,924.57 |
|  | 20 | 10/1/2019 | ($13,258.49) | $1,018.83 | ($12,239.66) | $509,684.91 |
|  | 21 | 11/1/2019 | ($13,258.49) | $994.93 | ($12,263.56) | $497,421.35 |
|  | 22 | 12/1/2019 | ($13,258.49) | $970.99 | ($12,287.50) | $485,133.85 |
| **2020** | 23 | 1/1/2020 | ($13,258.49) | $947.01 | ($12,311.48) | $472,822.37 |
|  | 24 | 2/1/2020 | ($13,258.49) | $922.98 | ($12,335.51) | $460,486.86 |
|  | 25 | 3/1/2020 | ($13,258.49) | $898.90 | ($12,359.59) | $448,127.27 |
|  | 26 | 4/1/2020 | ($13,258.49) | $874.77 | ($12,383.72) | $435,743.55 |
|  | 27 | 5/1/2020 | ($13,258.49) | $850.60 | ($12,407.89) | $423,335.66 |
|  | 28 | 6/1/2020 | ($13,258.49) | $826.37 | ($12,432.12) | $410,903.54 |
|  | 29 | 7/1/2020 | ($13,258.49) | $802.11 | ($12,456.38) | $398,447.16 |
|  | 30 | 8/1/2020 | ($13,258.49) | $777.79 | ($12,480.70) | $385,966.46 |
|  | 31 | 9/1/2020 | ($13,258.49) | $753.43 | ($12,505.06) | $373,461.40 |
|  | 32 | 10/1/2020 | ($13,258.49) | $729.02 | ($12,529.47) | $360,931.93 |
|  | 33 | 11/1/2020 | ($13,258.49) | $704.56 | ($12,553.93) | $348,378.00 |
|  | 34 | 12/1/2020 | ($13,258.49) | $680.05 | ($12,578.44) | $335,799.56 |

| Year | # | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|---|
| 2021 | 35 | 1/1/2021 | ($13,258.49) | $655.50 | ($12,602.99) | $323,196.57 |
|  | 36 | 2/1/2021 | ($13,258.49) | $630.90 | ($12,627.59) | $310,568.98 |
|  | 37 | 3/1/2021 | ($13,258.49) | $606.25 | ($12,652.24) | $297,916.74 |
|  | 38 | 4/1/2021 | ($13,258.49) | $581.55 | ($12,676.94) | $285,239.80 |
|  | 39 | 5/1/2021 | ($13,258.49) | $556.80 | ($12,701.69) | $272,538.11 |
|  | 40 | 6/1/2021 | ($13,258.49) | $532.01 | ($12,726.48) | $259,811.63 |
|  | 41 | 7/1/2021 | ($13,258.49) | $507.17 | ($12,751.32) | $247,060.31 |
|  | 42 | 8/1/2021 | ($13,258.49) | $482.28 | ($12,776.21) | $234,284.10 |
|  | 43 | 9/1/2021 | ($13,258.49) | $457.34 | ($12,801.15) | $221,482.95 |
|  | 44 | 10/1/2021 | ($13,258.49) | $432.35 | ($12,826.14) | $208,656.81 |
|  | 45 | 11/1/2021 | ($13,258.49) | $407.31 | ($12,851.18) | $195,805.63 |
|  | 46 | 12/1/2021 | ($13,258.49) | $382.22 | ($12,876.27) | $182,929.36 |
| 2022 | 47 | 1/1/2022 | ($13,258.49) | $357.09 | ($12,901.40) | $170,027.96 |
|  | 48 | 2/1/2022 | ($13,258.49) | $331.90 | ($12,926.59) | $157,101.37 |
|  | 49 | 3/1/2022 | ($13,258.49) | $306.67 | ($12,951.82) | $144,149.55 |
|  | 50 | 4/1/2022 | ($13,258.49) | $281.39 | ($12,977.10) | $131,172.45 |
|  | 51 | 5/1/2022 | ($13,258.49) | $256.06 | ($13,002.43) | $118,170.02 |
|  | 52 | 6/1/2022 | ($13,258.49) | $230.67 | ($13,027.82) | $105,142.20 |
|  | 53 | 7/1/2022 | ($13,258.49) | $205.24 | ($13,053.25) | $92,088.95 |
|  | 54 | 8/1/2022 | ($13,258.49) | $179.76 | ($13,078.73) | $79,010.22 |
|  | 55 | 9/1/2022 | ($13,258.49) | $154.23 | ($13,104.26) | $65,905.96 |
|  | 56 | 10/1/2022 | ($13,258.49) | $128.65 | ($13,129.84) | $52,776.12 |
|  | 57 | 11/1/2022 | ($13,258.49) | $103.02 | ($13,155.47) | $39,620.65 |
|  | 58 | 12/1/2022 | ($13,258.49) | $77.34 | ($13,181.15) | $26,439.50 |
| 2023 | 59 | 1/1/2023 | ($13,258.49) | $51.61 | ($13,206.88) | $13,232.62 |
|  | 60 | 2/1/2023 | ($13,258.45) | $25.83 | ($13,232.62) | ($0.00) |
| TOTAL – ALL | YEARS |  | $795,509.36 | $45,509.36 | $750,000 |  |

2. Payments will be made by wire transfer as indicated in the Settlement Agreement. If there is any change in the method or instructions of payment, the Holder shall inform the Maker at least 5 business days before payment is due.

3. This Note may be prepaid, in whole or in part, without penalty or premium. Partial payment does not alter the interest rate applicable each year as reflected in paragraph 1 of this Note.

4. Maker is in default of this Note on the date of occurrence of any of the following events ("Events of Default").

> A. Maker's failure to pay any amount provided for in this Note within five days of when such payment is due and payable ("Due Date"); provided, however, that an Event of Default does not occur if, because of events outside of Maker's control, the Holder does not receive the paid amount after transmission by Maker. Maker will make its best efforts to insure Holder's receipt of the paid amount.
>
> B. If prior to making the full payment of the amount due under this Note, any case, proceeding, or other action is instituted;

        a.    under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, seeking to have any order for relief of debtors, or seeking to adjudicate NEMHS as bankrupt or insolvent; or

        b.    seeking appointment of a receiver, trustee, custodian or other similar official for NEMHS or for all or any substantial part of NEMHS' assets.

    C. If Paragraph 1 of the Settlement Agreement is violated.

5.    The Maker shall provide the United States written notice of an Event of Default within two (2) business days of such event by overnight mail, delivered to the Office of the United States Attorney for the District of Maine ("USAO"), at 100 Middle Street, 6th Floor, East Tower, Portland, Maine, 04101.

6.    Upon the occurrence of an Event of Default, the United States will provide written notice of the Event of Default and Maker shall have the opportunity to cure such Event of Default within five (5) business days of receiving the notice as set out in Paragraph 2 of the Settlement Agreement:

    A. If the Maker fails to cure the Event of Default within five (5) business days of receiving the United States' Notice of the Event of Default, the portion of the Outstanding Balance (principal and interest balance) shall become immediately due and payable (default amount). Interest shall accrue on the default amount from the date of the Event of Default at 12 per cent per annum, compounded daily.

    B. The United States retains any and all other rights and remedies it has or may have under law and equity, and may exercise those rights or remedies, as set out in Paragraph 3 of the Settlement Agreement.

    C. No failure or delay on the part of the United States to exercise any right or remedy shall operate as a waiver of the United States' rights. No partial or single exercise by the United States of any right or remedy shall operate as a waiver of the United States' rights.

    D. Maker will pay the United States all reasonable costs of collection, including reasonable attorneys' fees and expenses.

7.    Waiver by the Holder of any default by Maker, its successors, or assigns will not constitute a waiver of a subsequent default. Failure by the Holder to exercise any right, power, or privilege which it may have by reason of default will not preclude the exercise of such right, power, or privilege so long as such default remains uncured or if a subsequent default occurs.

8.   This Note shall be governed and construed according to the laws of the United States of America.

9.   Maker acknowledges that it is entering into this Note, freely, voluntarily and with no degree of compulsion whatsoever.

10.  Maker hereby affirms that it has authority to enter into this Note, and that he has: (1) reviewed this Note and the Settlement Agreement; and (2) consulted with legal counsel in connection with this matter.

IN WITNESS THEREOF, Maker intending to be legally bound hereby, has executed this Note, duly attested this _____ day of February, 2018.

_____
Charles McCarthy, Owner
*On behalf of NEMHS*


_____
Notary Public
State of Maine
My Commission Expires:


GEMMA E. COLPRITT
Notary Public, Maine
My Comm. Expires
July 18, 2021

4